IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| F'REAL FOODS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| HAMILTON BEACH BRANDS, INC., | ) | |
| HERSHEY CREAMERY COMPANY and | ) | **DEMAND FOR JURY TRIAL** |
| PAUL MILLS D/B/A MILLS BROTHERS | ) | |
| MARKETS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FEDERAL UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN AND COMMON LAW UNFAIR COMPETITION

Plaintiff f'real Foods LLC ("f'real") complains of Defendants Hamilton Beach Brands, Inc. ("Hamilton Beach"), Hershey Creamery Company ("Hershey Creamery") and Paul Mills doing business as Mills Brothers Markets ("Mills Brothers") as follows:

### JURISDICTION AND VENUE

1.     This is a civil action for patent infringement, trademark infringement, trade dress infringement, federal unfair competition and common law unfair competition.  This Court has subject matter over this action under 28 U.S.C. §§ 1121, 1331, 1338(a) and 1367.  This Court has supplemental jurisdiction over f'real's common law trademark and unfair competition claims because such claims are so related to f'real's claims under the federal trademark and unfair competition laws that they form part of the same case and controversy.

2.     Personal jurisdiction over all defendants is vested in this Court because each of the defendants has committed acts of infringement in this judicial district, is incorporated

in this judicial district, and has otherwise engaged in a persistent course of conduct in this judicial district.

      3.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because each of the defendants has conducted acts of infringement in this district, does business in this district, and resides in this district.

## PARTIES

      4.    f'real is a California limited liability company with its principal place of business at 6121 Hollis Street, Suite 500, Emeryville, California 94608.  f'real regularly does business in this judicial district through its retail customers and has lost business opportunities in this judicial district due to the infringing actions set forth in this Complaint.

      5.    Hamilton Beach is a Delaware corporation with its principal place of business at 4421 Waterfront Drive, Glen Allen, Virginia 23060.

      6.    Hershey Creamery is a Delaware corporation with its principal place of business at 301 South Cameron Street, Harrisburg, Pennsylvania 17101.

      7.    Paul Mills d/b/a Mills Brothers Markets has a principal place of business at 508 S.E. 2nd Street, Milford, Delaware 19963.

## F'REAL'S PATENT, TRADEMARK AND TRADE DRESS RIGHTS

      8.    f'real produces milkshakes, smoothies and frozen cappuccino beverages product that are sold at over 13,000 locations across the United States and Canada, including convenience stores, colleges, universities, theaters and military bases.  To enjoy a f'real product, the customer chooses a desired frozen milkshake, smoothie or cappuccino from a merchandizing freezer at the retail location and inserts it into a blender sold to the retailer by f'real.  The blender

then mixes the frozen product to a desired consistency and makes it available for the enjoyment of the customer.

9.      f'real's founder, Jim Farrell, began f'real's business in the garage of his California home.  Jim Farrell's objective was to build a business that would allow customers to make their own high quality milkshakes at convenience stores and fast food restaurants using real milkshake ingredients (e.g., milk and ice cream).

10.     In building the f'real business, Jim Farrell faced numerous challenges. A first challenge was providing the customer with a choice of quality milkshakes that could be quickly prepared without requiring extensive training or involvement by the busy retailer. A second challenge was to keep the blender sanitary after milkshakes were prepared, again without requiring extensive training or involvement by the busy retailer.

11.     Jim Farrell addressed the first challenge by pre-preparing milkshakes in various flavors using authentic ingredients, freezing them and then sealing them for delivery to the retailer.  To achieve a preferred old-fashioned texture for f'real's frozen milkshakes, Jim Farrell developed a self-serve blender that could be operated by the customer.  In testing prototype blenders, Jim Farrell found that simply cutting through the frozen milkshake with a blender blade did not produce the old-fashioned milkshake texture that he wanted.  After hard work and experimentation, Jim Farrell discovered that adding liquid, such as milk or water, to the frozen milkshake during the blending process made it easier to blend to a milkshake with old-fashioned texture.  Jim Farrell also discovered that the milkshake could be aerated to help produce the desired texture.

12.     On May 17, 1996, Jim Farrell filed U.S. Patent Application No. 649,534 for his new blender and blender process.  Based upon this patent application, the U.S. Patent and

Trademark Office duly and legally issued U.S. Patent No. 5,803,377 ("'377 patent") on September 8, 1998, entitled "Apparatus And Method For Making Frozen Drinks," to Jim Farrell as the inventor. f'real owns the '377 patent and has the right to sue for infringement. A copy of the '377 patent is attached to this Complaint as Exhibit 1.

13.     Unless the milkshake blender is sanitized in a timely manner, bacteria can grow on food particles left in the blending chamber and lead to disease.   To address this need for sanitation, Jim Farrell developed a system in the f'real blenders that would both automatically minimize the amount of food particles that were released in the food preparation chamber during preparation of the milkshake and then automatically clean the food preparation chamber after the milkshake was prepared and removed from the chamber.   Jim Farrell minimized the release of food particles by having f'real's blender automatically place a splash shield over the top of the milkshake while the milkshake was being blended.   When the blending was complete and the milkshake was removed from the blending chamber , cleaning fluid, such as hot or warm water, would automatically be sprayed through nozzles into the blending chamber to rinse off the splash shield as well as the walls of the blending chamber.

14.     On November 15, 2002, Jim Farrell filed U.S. Provisional Patent Application No. 60/426,622 for his automatic sanitizing blender and sanitizing process.   This U.S. Provisional Patent Application led to three issued U.S. Patents.

15.     On December 5, 2006, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,144,150 ("'150 patent"), entitled "Rinseable Splash Shield And Method Of Use," to Jim Farrell as the inventor. f'real owns the '150 patent and has the right to sue for infringement. A copy of the '150 patent is attached to this Complaint as Exhibit 2.

16.     On April 21, 2009, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,520,658 ("'658 patent"), entitled "Rinseable Splash Shield And Method Of Use," to Jim Farrell as the inventor. f'real owns the '658 patent and has the right to sue for infringement. A copy of the '658 patent is attached to this Complaint as Exhibit 3.

17.     On April 21, 2009, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,520,662 ("'662 patent"), entitled "Rinseable Splash Shield And Method Of Use," to Jim Farrell as the inventor. f'real owns the '662 patent and has the right to sue for infringement. A copy of the '662 patent is attached to this Complaint as Exhibit 4.

18.     Jim Farrell chose the name "F'REAL" for his business to allude, in part, to the fact that he was using authentic ingredients, such as milk and ice cream, in his milkshake products, rather than the heavy stabilizers and thickening agents of his competitors, while, at the same time, branding his business in a fun, playful, fanciful, irreverent and distinctive way.

19.     f'real first started using its "F'REAL" trademark in commence on November 15, 2000. Jim Farrell installed f'real's first commercial blender at an ARBY'S® restaurant in Minneapolis, Minnesota.    Since that time, f'real has continuously used its "F'REAL" trademark in commerce for its milkshake products, both on its own and later in conjunction with f'real's swirl logo.

20.     On November 6, 2001, the U.S. Patent and Trademark Office duly and legally issued Federal Trademark Registration No. 2,504,812 ("Federal '812 Registration") on the Principal Register to f'real for the "F'REAL" trademark for: (a) machines for the production of milkshakes, smoothies and other frozen drinks in Class 7; (b) milkshakes and frozen yogurt drinks in Class 30; and (c) frozen fruit flavored drinks, in Class 32. f'real's Federal '812

Trademark Registration is currently in full force and is valid, subsisting and owned by f'real. A copy of f'real's Federal '812 Trademark Registration is attached to this Complaint as Exhibit 5.

21.     On September 4, 2012, the U.S. Patent and Trademark Office duly and legally issued Federal Trademark Registration No. 4,203,652 ("Federal '652 Registration") on the Principal Register to f'real for its "F'REAL" trademark with swirl design for:  (a) machines for blending milkshakes, smoothies and other frozen drinks; machines, namely electric food blenders and electric ice crushers for production of milkshakes, smoothies and other frozen drinks in Class 7; (b) milkshakes, frozen yogurt drinks, frozen blended coffee-based beverages, frozen blended tea-based beverages, frozen blended espresso-based beverages, frozen blended cocoa-based beverages in Class 30; and (c) frozen fruit beverages and smoothies in Class 32. f'real's Federal '652 Trademark Registration is currently in full force and is valid, subsisting and owned by f'real.  A copy of f'real's Federal '652 Trademark Registration is attached to this Complaint as Exhibit 6.

22.     In addition to the federally registered "F'REAL" trademarks, f'real uses the trademark "REAL MILKSHAKES ARE REAL BETTER" to identify the source of its milkshake products.  On July 8, 2013, f'real filed application number 86/004,047 to obtain a federal trademark registration for "REAL MILKSHAKES ARE REAL BETTER."  Recently, the U.S. Patent and Trademark Office issued a "Notice of Allowance" for f'real's application number 86/004,047.

23.     To help consumers quickly identify its milkshake products, particularly when customers enter convenience stores featuring those products, f'real has developed a distinctively presented display kiosk.  In many locations, f'real's product display kiosk has a blender with f'real signage sitting atop a merchandizing freezer with a see-through glass door.

Within the freezer, f'real's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer. The f'real display kiosk prominently features f'real's name with f'real advertising slogans like "Blend a F'REAL... for REAL" or "REAL Milkshakes, REAL Good." A key part of f'real's advertising to identify and distinguish its products is the prominent use of the word "REAL."

### DEFENDANTS' ACTIVITIES

24.     In or about 2010, defendant Hamilton Beach indicated to f'real that it was interested in supplying milkshake blending equipment to fast food restaurants, full service restaurants and ice cream stores. To avoid violating f'real's patent rights, Hamilton Beach sought and obtained a license from f'real under f'real's '150, '658 and '662 patents. A little more than a year later, Hamilton Beach changed its mind about paying f'real for use of f'real's patented technology and, on August 2, 2011, sent f'real a notice of termination under the license agreement.

25.     In or about 2013, Hamilton Beach teamed up with co-defendant Hershey Creamery to go into direct competition with f'real in f'real's core convenience store market. On information and belief, Hamilton Beach produces the milkshake blenders and provides them to Hershey Creamery with operating instructions. On information and belief, Hershey Creamery then leases the milkshake blenders and sells its frozen milkshakes to convenience store retailers along with operating instructions, including blender operating instructions provided by Hamilton Beach. One retailer who is operating a Hamilton Beach blender and selling Hershey Creamery milkshakes for use with that blender is Mills Brothers Market at 508 S.E. 2nd Street, Milford, Delaware 19963 owned by defendant Paul Mills.

26.     The blenders made by Hamilton Beach practice the blending inventions disclosed and claimed in f'real's '377 patent as well as the blender sanitation inventions disclosed and claimed in f'real's '150, '658 and '662 patents.

27.     In addition to using f'real's patented blender technology, Hamilton Beach and Hershey Creamery have packaged their products in containers and sold their products at retailer kiosks that closely mimic those developed by f'real.  For example, as shown in attached Exhibit 7, Hershey Creamery packages their competing frozen milkshakes in a plastic container that is comparable in size and shape to the plastic container f'real uses.  Like the f'real milkshake containers, the Hershey Creamery milkshake containers make prominent and repeated use of the word "REAL" in all capital letters, including "REAL MILKSHAKE" and "REAL ICE CREAM."

28.     Also like f'real, the competing Hamilton Beach and Hershey Creamery kiosks have a blender with advertising signage sitting atop a merchandizing freezer with a see-through glass door.  Within the freezer, Hershey Creamery's milkshake products are contained in generally cylindrical sealed cups neatly arrayed in rows and columns within the freezer.  Like f'real, the advertising signage makes repeated and prominent use of the word "REAL" in capital letters, including multiple references to "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST."  Side-by-side photos of the Hamilton Beach/Hershey Creamery "Shake Shop Express" kiosk and the f'real kiosk are provided in attached Exhibit 8.

## COUNT I
### (Infringement of U.S. Patent No. 5,803,377)

29.     f'real realleges and incorporates by reference paragraphs 1 through 28 of this Complaint.

30.     The '377 patent is valid and enforceable.

31.     Hamilton Beach, Hershey Creamery and Mills Brothers have each directly infringed one or more claims of the '377 patent by making, using, offering for sale, selling, and/or importing into the United States blending machines that embody the patented invention, including the blending machine pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

32.     On information and belief, Hamilton Beach, Hershey Creamery and Mills Brothers will continue to infringe the '377 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

33.     As a result of the infringement of the '377 patent by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has been damaged in an amount to be determined at trial.

<u>**COUNT II**</u>
**(Infringement of U.S. Patent No. 7,144,150)**

34.     f'real realleges and incorporates by reference paragraphs 1 through 33 of this Complaint.

35.     The '150 patent is valid and enforceable.

36.     Hamilton Beach, Hershey Creamery and Mills Brothers have each directly infringed one or more claims of the '150 patent by making, using, offering for sale, selling, and/or importing into the United States blending machines that embody or practice the patented invention, including the blending machine pictured in "Shake Shop Express" kiosk shown in attached Exhibit 8.

37.     Despite knowing through its terminated license agreement with f'real that its unlicensed blending machines infringe the '150 patent, Hamilton Beach has induced the infringement of one or more claims of the '150 patent by providing operating instructions to

Hershey Creamery, Mills Brothers and other retailers for use of the unlicensed Hamilton Beach blending machines pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

38.     Since it knows that its unlicensed blending machines infringe the '150 patent, Hamilton Beach's infringement of the '150 patent is willful, deliberate and in conscious disregard of f'real's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §§ 284 and 285.

39.     On information and belief, Hamilton Beach, Hershey Creamery and Mills Brothers will continue to infringe the '150 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

40.     As a result of the infringement of the '150 patent by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has been damaged in an amount to be determined at trial.

## COUNT III
### (Infringement of U.S. Patent No. 7,520,658)

41.     f'real realleges and incorporates by reference paragraphs 1 through 40 of this Complaint.

42.     The '658 patent is valid and enforceable.

43.     Hamilton Beach, Hershey Creamery and Mills Brothers have each directly infringed one or more claims of the '658 patent by making, using, offering for sale, selling, and/or importing into the United States blending machines that embody or practice the patented invention, including the blending machine pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

44.     Despite knowing through its terminated license agreement with f'real that its unlicensed blending machines infringe the '658 patent, Hamilton Beach has induced the

infringement of one or more claims of the '658 patent by providing operating instructions to Hershey Creamery, Mills Brothers and other retailers for use of the unlicensed Hamilton Beach blending machines pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

45.     Since it knows that its now unlicensed blending machines infringe the '658 patent, Hamilton Beach's infringement of the '658 patent is willful, deliberate and in conscious disregard of f'real's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §§ 284 and 285.

46.     On information and belief, Hamilton Beach, Hershey Creamery and Mills Brothers will continue to infringe the '658 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

47.     As a result of the infringement of the '658 patent by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has been damaged in an amount to be determined at trial.

### COUNT IV
#### (Infringement of U.S. Patent No. 7,520,662)

48.     f'real realleges and incorporates by reference paragraphs 1 through 47 of this Complaint.

49.     The '662 patent is valid and enforceable.

50.     Hamilton Beach, Hershey Creamery and Mills Brothers have each directly infringed one or more claims of the '662 patent by practicing the patented invention, including using the type of blending machine pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

51.     Despite knowing through its terminated license agreement with f'real that its now unlicensed blending machines infringe the '662 patent, Hamilton Beach has induced the

infringement of one or more claims of the '662 patent by providing operating instructions to Hershey Creamery, Mills Brothers and other retailers for use of the unlicensed Hamilton Beach blending machines pictured in the "Shake Shop Express" kiosk shown in attached Exhibit 8.

52.    Since it knows that its unlicensed blending machines infringe the '662 patent, Hamilton Beach's infringement of the '662 patent is willful, deliberate and in conscious disregard of f'real's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §§ 284 and 285.

53.    On information and belief, Hamilton Beach, Hershey Creamery and Mills Brothers will continue to infringe the '662 patent, and thereby cause irreparable injury to f'real, unless enjoined and restrained by this Court.

54.    As a result of the infringement of the '662 patent by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has been damaged in an amount to be determined at trial.

## COUNT V
### (Infringement Of A Federally Registered Trademark)

55.    f'real realleges and incorporates by reference paragraphs 1 through 54 of this Complaint.

56.    The use by Hamilton Beach, Hershey Creamery and Mills Brothers of the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks for competing blending machines and milkshakes constitutes a reproduction, copying, counterfeit and colorable imitation of f'real's federally registered "F'REAL" and "F'REAL" with swirl marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

57.     As a direct and proximate result of the infringement of the "F'REAL" marks by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation and goodwill.

### COUNT VI
**(Common Law Trademark Infringement)**

58.     f'real realleges and incorporates by reference paragraphs 1 through 57 of this Complaint.

59.     The use by Hamilton Beach, Hershey Creamery and Mills Brothers of the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks for competing blending machines and milkshakes constitutes a reproduction, copying, counterfeit and colorable imitation of f'real's "F'REAL," "F'REAL" with swirl and "REAL MILKSHAKES ARE REAL BETTER" marks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

60.     As a direct and proximate result of the infringement of f'real's marks by Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation and goodwill.

### COUNT VII
**(Trade Dress Infringement)**

61.     f'real realleges and incorporates by reference paragraphs 1 through 60 of this Complaint.

62.     f'real's development of a product container and product display kiosk for its retailers which has inherently distinctive, non-functional features and has developed a secondary meaning in the minds of consumers as being associated with f'real constitutes protectable trade dress.

63.    The use of f'real's protectable trade dress by Hamilton Beach, Hershey Creamery and Mills Brothers in connection with the use, promotion, sale, offering for sale and advertising of their competing milkshake products is likely to cause confusion, mistake and/or deception by causing consumers to believe that f'real is the source of defendants' competing milkshake products and that there is an association between defendants and f'real when, in fact, there is no such association.

64.    As a result of defendants' improper and unauthorized infringement of f'real's trade dress rights, f'real has suffered and will continue to suffer damages. f'real is thus entitled to damages for defendants' infringement, including defendants' profits, and an injunction to prevent continued infringement of f'real's trade dress rights.

## COUNT VIII
### (Federal Unfair Competition/False Designation of Origin Under 15 U.S.C. § 1125(a))

65.    f'real realleges and incorporates by reference paragraphs 1 through 64 of this Complaint.

66.    The use of the infringing "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks by defendant Hamilton Beach, Hershey Creamery and Mills Brothers for their competing milkshake products constitutes a false designation of origin that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between defendants and f'real, or as to the origin, sponsorship, or approval of defendants' products by f'real.

67.    The use of the confusingly similar trade dress by defendants Hamilton Beach, Hershey Creamery and Mills Brothers for their competing milkshake products and product kiosks constitutes a false designation of origin that is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association between defendants and f'real, or as to the origin, sponsorship, or approval of defendants' products by f'real.

68.     As a result of this unfair competition by defendants Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has suffered and will continue to suffer damages. f'real is thus entitled to damages for defendants' infringement, including defendants' profits, and an injunction to prevent continued infringement of f'real's trade dress rights.

## COUNT IX
### (Common Law Unfair Competition)

69.     f'real realleges and incorporates by reference paragraphs 1 through 68 of this Complaint.

70.     The use of the confusingly similar "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks by defendant Hamilton Beach, Hershey Creamery and Mills Brothers for their competing milkshake products constitutes unfair competition under the common law.

71.     The use of the confusingly similar trade dress by defendants Hamilton Beach, Hershey Creamery and Mills Brothers for their competing milkshake products and product kiosks also constitutes unfair competition under the common law.

72.     As a result of this unfair competition by defendants Hamilton Beach, Hershey Creamery and Mills Brothers, f'real has and will continue to suffer damages. f'real is thus entitled to damages for defendants' infringement, including defendants' profits, and an injunction to prevent continued infringement of f'real's trade dress rights.

## PRAYER FOR RELIEF

WHEREFORE, f'real asks this Court to enter judgment in f'real's favor against defendants Hamilton Beach, Hershey Creamery and Mills Brothers as follows:

A.     That defendants Hamilton Beach, Hershey Creamery and Mills Brothers have infringed f'real's '377, '150, '658 and '662 patents;

B.     That infringement of the '150, '658 and '662 patents by Hamilton Beach has been willful;

C.     That defendants Hamilton Beach, Hershey Creamery and Mill Brothers, their officers, agents, servants, employees and all persons in active concert or participation with any of them, and their successors and assigns be temporarily, preliminarily and permanently enjoined from infringement of the '377, '150, '658 and '662 patents including, but not limited to, making, using, offering for sale, selling, and/or importing into the United States blending machines that infringe any of the patents-in-suit before the expiration dates of those patents;

D.     As part of the prayed for injunction, that this Court order defendants Hamilton Beach and Hershey Creamery to recall from their retailers and all others in the chain of commerce all infringing blenders;

E.     That f'real be awarded damages under 35 U.S.C. § 284 adequate to compensate it for defendants' infringement of the '377, '150, '658 and '662 patents, but no less than a reasonable royalty, with interest (including pre-judgment and post-judgment interest), and a trebling of such damages in view of the willful nature of the infringement.

F.     That defendants Hamilton Beach, Hershey Creamery and Mills Brothers be adjudged to have infringed f'real's trademark and trade dress rights;

G.     That defendants Hamilton Beach, Hershey Creamery and Mills Brothers, their officers, agents, servants, employees and all persons in active concert or participation with any of them, and their successors and assigns be temporarily, preliminarily and permanently enjoined from continuing to infringe f'real's trademark and trade dress rights, including continuing to use the "REAL ICE CREAM," "REAL MILKSHAKES" and "REAL FAST" marks or any confusingly similar variations thereof for their competing milkshake products and kiosks.

H.     That f'real be awarded compensatory, consequential, statutory and/or exemplary damages in an amount to be determined at trial for infringement of f'real's trademark and trade dress rights.

I.     That defendants Hamilton Beach, Hershey Creamery and Mills Brothers be ordered to make a written report within a reasonable period, to be filed with the Court, detailing the manner of compliance with the requested injunctive relief.

J.     That f'real be awarded its reasonable attorneys' fees and costs of suit.

K.     That f'real be awarded such other relief as the Court may deem just and proper.

## JURY DEMAND

f'real hereby demands a trial by jury for all issue so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Rodger D. Smith II (#3778)
Ethan H. Townsend (#5813)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
etownsend@mnat.com

OF COUNSEL:

Guy W. Chambers
Ellen P. Liu
SIDEMAN & BANCROFT LLP
One Embarcadero Center, 22nd Floor
San Francisco, CA  94111
(415) 392-1960

October 3, 2014
8547866.3

*Attorneys for Plaintiff*